# EXHIBIT B

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                   HOUSTON DIVISION

 3   THOMAS TAYLOR              *
                                *
 4   VS.                        *   Case No. 4:23-cv-00843
                                *
 5   SCHOOL OF THE WOODS        *

 6


 7                   ORAL DEPOSITION

 8                         OF

 9                   SHERRY HERRON

10

                Taken at the offices of
11                Neel, Hooper & Banes
              1800 West Loop South, Suite 1750
12                   Houston, Texas

13   November 30, 2023                       9:42 a.m.
```



1  added these -- I assembled these ideas.
2     Q.  Do you present this handbook in its full form
3  to your staff to review?
4     A.  Not to all the staff.
5     Q.  Why wouldn't all the staff get an opportunity
6  to review the employee handbook?
7     A.  Well, they could.  Specifically, our -- I use
8  this when I'm hiring new people and explaining the
9  policies of the school.
10    Q.  And you personally speak -- meet with everyone
11 that you hire for the school?
12    A.  Yes.
13    Q.  And you say you go through this handbook with
14 them?
15    A.  Well, the parts that pertain to them, because
16 the -- the document actually has many -- we teach all
17 the way from 2-1/2 to grade 12, so parts of it don't
18 pertain to everybody.
19    Q.  Do you provide them with a copy of the
20 handbook?
21    A.  Yes.
22    Q.  Do they get to keep the handbook and refer back
23 to it?
24    A.  Yes.
25    Q.  Do you require them to sign off on receipt of



1     Q.  So I'm really just looking for a simple
2  yes-or-no question -- yes-or-no response.  Did you take
3  any action in response to this e-mail that you were
4  copied onto for --
5     A.  I would have to look at the rest of the
6  enclosure, but I did not e-mail him.  Whether I had a
7  conversation with him or not, I can't remember.
8              MR. BANES:     You're not limited to
9  yes-or-no answers.  "I don't know", or "I'd have to
10 look at something", it's perfectly fine.
11             MR. DUPREE:    Mr. Banes, are you going
12 to be testifying here today, get sworn in?
13             MR. BANES:     Are you going to be
14 directing her how to answer?  Are you going to be
15 directing her saying that she can't say "I don't know",
16 that she can't say, "I need to look at something?"  Are
17 you going to be telling her that?
18             MR. DUPREE:    Mr. Banes, you are
19 welcome to prepare your client any way you want to.
20 I'm asking you if you are going to be providing
21 testimony, as opposed to the deponent.
22             MR. BANES:     I could ask you the same
23 thing.
24             MR. DUPREE:    Well, no.  You can't.
25             MR. BANES:     Don't tell my witness how



1    Q.  Do you recall whether or not you responded to
2  this e-mail?
3    A.  I don't recall.  It's in the enclosure, but I
4  don't recall.
5              [Exhibit 7 was marked.]
6  BY MR. DUPREE:
7    Q.  I'm showing you what I've marked as Plaintiff's
8  Exhibit 7.  This is another e-mail that has been
9  produced in this litigation.  This is an e-mail from
10 Mr. Taylor to you on April 29th of 2021, at 7:35 a.m.
11 Do you recognize this document?
12   A.  Yes.
13   Q.  I'm just reading from the top, here, and I'm
14 going to ask a few questions.  It says, "Sherry, after
15 another high-blood-pressure, agitated, sleepless night,
16 it's clear to me that the issues we discussed yesterday
17 are going to be our central pushing boundaries."  You
18 see that?
19   A.  Yes.
20   Q.  Next, it says, "This is a matter of workplace
21 harassment."  Do you see that?
22   A.  Yes.
23   Q.  He later states -- and this is a skip-down.  It
24 says, "Until the harassment is acknowledged, stopped,
25 and I have time to recover, this is really nothing else



```
 1   that can be done."  Do you see that?
 2       A.  Yes.
 3       Q.  At the end of this particular e-mail -- I'm
 4   skipping down to the last paragraph, here, and it says,
 5   "You acknowledged yesterday that Amanda pushes people's
 6   boundaries, and you have been tolerating it."  You see
 7   that?
 8       A.  Yes.
 9       Q.  Again it says, "This is harassment."  Do you
10   see that?
11       A.  Yes.
12       Q.  It says, "As head of the school, you have a
13   responsibility to either stop it or take responsibility
14   for any consequences of it."  Do you see that?
15       A.  Right.
16       Q.  Can you tell the jury what you did to
17   investigate Mr. Thomas's claims of that workplace
18   harassment in this particular message?
19       A.  First of all, I never said that I had been
20   tolerating it.  Any conversations that I had with
21   other people, I do not discuss with their colleagues,
22   and therefore, I didn't discuss conversations with
23   Amanda Villanueva with Mr. Taylor, and I had -- have
24   -- I had discussions with her at that point about
25   other issues; not this issue.
```



1  Q. Ms. Herron, my question is very simple. Mr.
2  Thomas Taylor uses the word "harassment" at least three
3  separate times in this message.
4  A. Yes. What do you think he meant?
5  Q. So what I'm asking you is what you did, as
6  head of the school, to respond or investigate these
7  claims.
8  A. Well, the fact that I tolerated it is not
9  true, and it's not his business for me to discuss
10 what I talk with to another faculty. It's not his
11 business nor his place to know that, so I have -- had
12 already been in conversations with that person, but
13 it's not his right to know that.
14 Q. Ms. Herron, are you saying that you
15 investigated Mr. Thomas Taylor's claims of harassment
16 before the claims were made?
17         MR. BANES: Objection. Assumes facts
18 not evidence.
19 A. No. What he was alleging, as I remember, that
20 it was a pervasive thing, and not anything specific
21 such as this situation.
22 Q. So you received this e-mail on April 29th,
23 2021. Tell the jury what steps you took to investigate
24 the claims of harassment in this message.
25         MR. BANES: Objection. Assumes facts not



```
 1  in evidence.
 2       A.  I asked Mr. Taylor for another meeting, which
 3  we set up.
 4       Q.  When did you ask for that meeting?
 5       A.  When did I ask for it?  After I got this
 6  e-mail.
 7       Q.  Do you recall what the date of the meeting
 8  was?
 9       A.  It was supposed to be on May 5th.
10       Q.  And did the meeting take place?
11       A.  It did not.
12       Q.  What other steps did you take to investigate
13  the claims of harassment that Mr. Thomas made in this
14  e-mail?
15       A.  I believe that I said that his complaint about
16  harassment was a surprise, and the fact that he
17  refused to take instructions from the principal made
18  it very difficult, but I did talk to Dr. Coe about
19  that; so I talked to her about it and I was trying to
20  find out more about it.
21       Q.  Ms. Herron, you're talking about the January
22  exchange with Mr. Coe -- Dr. Coe and Mr. Taylor.
23       A.  Yes.
24       Q.  I'm not asking about that.  I'm asking what you
25  did -- you've already told me that you set up with
```



1   meeting with Mr. Taylor, so I'm not asking you that
2   again.  I'm only asking about the reports that are in
3   this message.  I'm asking what you did, as head of
4   school, to investigate the complaints of harassment.
5   You've already told me one thing.  Is there anything
6   else?
7      A.  No.
8      Q.  So the only thing you did in response to a
9   claim of harassment was set up a meeting for May 5th
10  with Mr. Taylor that never happened?
11     A.  Correct.
12     Q.  Was there any corrective action taken as a
13  result of Mr. Thomas's claims of harassment?
14     A.  Mr. Taylor's claims?
15     Q.  I'm sorry, Mr. Taylor.
16     A.  He was complaining about instructions from a
17  supervisor, and didn't like the suggestions, and
18  that's what I found out.
19     Q.  Are you -- is it your testimony that Amanda,
20  who he's referring to here, is a supervisor?
21     A.  No, I'm talking about what he -- what he's
22  alleging here is that Amanda Villanueva was
23  complaining about him, and I know that she was just
24  reporting what the students had told her, so I already
25  knew that before I got this e-mail.



1  Q. I'm not sure I understand your response.
2  A. Okay, so the students report to their
3 advisors.
4  Q. Let me ask the question this way.
5  A. Okay.
6  Q. Was there any corrective action taken after
7 this e-mail was submitted --
8  A. There was nothing to correct.
9  Q. -- to you on April 29th of 2021?
10  A. There was nothing to correct.
11  Q. Is your response no, no corrective action was
12 taken?
13  A. No.
14  Q. That is your response?
15  A. Yes.
16  Q. I just want to make sure the record's clear.
17 That's why I'm asking you.  If you would refer back to
18 the employee handbook, particularly on page 9.  So I'm
19 one, two, three, four paragraphs down.  The paragraph
20 starts, "The school will promptly", but I'm going to
21 ask you about a different sentence.  The third
22 sentence states, "The school will not condone
23 retaliation against any employee or student who
24 reports possible harassment or any appropriate
25 behavior, or who assists with an investigation."  You



```
 1  see that?
 2       A.   Yes.
 3       Q.   What steps did you take to ensure that
 4  Mr. Taylor would not be subject to harassment for
 5  reporting harassment -- retaliation for reporting
 6  harassment to you?
 7            MR. BANES:      Objection.  Assumes facts
 8  not evidence.
 9            THE WITNESS:    Okay.
10            MR. BANES:      I just say that -- you
11  can still answer, ma'am, if you understand it.
12       A.   Well, I don't think I -- I don't understand.
13  This e-mail -- the only way I can answer, if I
14  understand your question, is, this e-mail, I didn't
15  share this e-mail with anybody, so I don't know how
16  anybody could retaliate.
17       Q.   All right, so my question was:  What steps did
18  you take to make sure that Mr. Taylor wasn't subject
19  to harassment?  Is it your response that the step you
20  took was not to share the e-mail with anyone?
21       A.   I never share personal e-mails unless I'm
22  given permission.
23       Q.   Did you take any other steps to make sure that
24  Mr. Taylor was not subject to retaliation for reporting
25  harassment?
```



1   A.   No.
2   Q.   You talked about a meeting that was set up for
3   May 5th.  Did you respond in any way to this
4   particular e-mail, beyond setting up that meeting?
5   That Mr. Taylor sent you here on the 29th.
6   A.   Well, I was waiting for him to request the
7   meeting.  He had to cancel because he had to do
8   something for the school.
9   Q.   He had to teach a class that day?
10  A.   Yeah.
11  Q.   Okay.  Were you able to confirm that he had to
12  teach a class --
13  A.   Oh, I knew.
14  Q.   -- that day -- did you set another time for
15  the meeting, understanding that he had to teach a
16  class on the day that you --
17  A.   No, I didn't, because he wasn't ready to do
18  that.  He needed -- we need to figure out another day.
19  Q.   Did you suggest any other day?
20  A.   No.
21  Q.   Why didn't you suggest another day for the
22  meeting?
23  A.   I got an e-mail that said he couldn't come,
24  and that we would talk later.
25  Q.   That was acceptable to you to just to decide



1   understood sexual harassment, but not anything about
2   giving instructions to people being considered
3   harassment.
4       Q.  But my question is, I think, very simple, but
5   I can mess it up, so, you know, don't feel anything
6   about asking me to correct it.  I'm asking if you, as
7   head of school, need to understand the substance of
8   the harassment complaint for you to take any action in
9   response to it?
10              MR. BANES:    Objection.  Calls for a
11  legal conclusion.  You can answer if you understand it,
12  ma'am.
13      A.  I want to examine what is being complained
14  about, so if -- if it's possible to remediate it, we
15  will.
16      Q.  If you would look with me on Exhibit 7, the
17  e-mail from Mr. Taylor to yourself on April 29th of
18  2021, in the second sentence, he says, "This is a
19  matter of workplace harassment."  Do you see that?
20      A.  I do.
21      Q.  Now, you just testified that you would want to
22  examine the situation to understand it.
23      A.  I did.  I do.
24      Q.  What did you do, after the e-mail was sent to
25  you on April 29th of 2021, to understand his complaint



```
 1   of workplace harassment?
 2       A.   I -- I requested a meeting on May 5th.
 3       Q.   And that's all you did?
 4       A.   That's right.
 5       Q.   Ms. Herron, did you make the decision not to
 6   renew Mr. Taylor's teaching contract on June 11th of
 7   2021?
 8       A.   Me and the principal, yes.
 9       Q.   Yourself and Dr. Coe?
10       A.   Yes.  I'm not sure about the date, but...
11              [Exhibit 8 was marked.]
12   BY MR. DUPREE:
13       Q.   I'm going to show you what I've marked as
14   Plaintiff's Exhibit 8.  Now, these are what I believe
15   to be notes from a telephone call.  The date in the top
16   right corner is June 11th of 2021.  Do you recognize
17   this document?
18       A.   Yes.
19       Q.   The second page of the document, which is
20   primarily handwritten, has two letters at the -- at the
21   end.  "SH"; do you see that?
22       A.   Yes.
23       Q.   Is this your handwriting?
24       A.   Yes.
25       Q.   That's your signature --
```



1 BY MR. DUPREE:
2    Q. First page is an e-mail from Klein Independent
3 School District. The date is August -- October 16th of
4 2021, to Sherry Herron. Do you recognize this
5 document?
6    A. Yes.
7    Q. Second page here is a substitute reference for
8 Klein Independent School District. Right next to it,
9 it says applicant is Thomas Taylor. Do you see that?
10    A. Yes.
11    Q. Below that, it says "Assigned to Sherry
12 Herron." Do you see that?
13    A. Yes.
14    Q. And you completed this substitute reference --
15    A. I did.
16    Q. -- for Mr. Taylor? Now, if you look at the
17 categories, here, just below -- the box just below the
18 writing, it says -- the first category is "personal
19 integrity." Your reference here is "above average"; do
20 you see that?
21    A. Yes.
22    Q. The second category is titled "Interpersonal
23 skills - works well with others." Your rating of
24 Mr. Taylor here is "above average." Do you see that?
25    A. Yes.

