IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THOMAS TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | (Judge David Hittner) |
| | § | CIVIL ACTION NO. 4:23-cv-00843 |
| SCHOOL OF THE WOODS, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, School of the Woods ("Defendant" or "the

Woods"), and files this Reply in Further Support of Its Motion for Summary

Judgment, respectfully showing the Court as follows:

## I.    INTRODUCTION & SUMMARY

Plaintiff's Opposition to the Woods' Motion for Summary Judgment

("Opposition") reveals more in what it concedes than what it contests.  Each of

Plaintiff's arguments are woven together with one common thread:  Plaintiff cannot

produce any factual evidence to overcome the Woods' claims or to support his own.

Plaintiff avoids addressing the Woods' arguments and offers only either conclusory

allegations or bald attempts to manufacture a material dispute where none exists.

First, the Opposition does not refute that Plaintiff was aware of the anti-

harassment policy at the Woods, nor does it refute that he made no written report of

harassment specific to sexual orientation.  Neither does Plaintiff refute *any* of the numerous accounts of factual evidence the Woods' proffered to support its claim that Plaintiff was terminated for instructional and communicatory deficiencies. Plaintiff also does not dispute that his alleged disabilities are not cognizable under the Americans with Disabilities Act ("ADA").

Second, Plaintiff asserts conclusory allegations not supported by any credible factual evidence.  What is most revealing of his claims is that several of Plaintiff's unsupported assertions *should* have had easily retrievable information.  According to his Interrogatory Responses, Plaintiff was being treated by four (4) doctors for medical issues related to his alleged disabilities, yet no records were produced supporting this. (Exhibit 12, Plaintiff's Responses to Defendant's First Set of Interrogatories "Interrogatories" pp. 8-9, No. 6).  Plaintiff also identified six (6) non-LGBTQ+ teachers at the Woods as persons with knowledge in the matter, yet he chose not to depose *any* of them (Exhibit 12, pp. 6-7, No. 3-4).  Nor does Plaintiff dispute the Affidavits provided by these individuals, including Dr. Branch and Ms. Naylor, who both refute in detail the claim that Plaintiff was treated any differently. (ECF 17-2, pp. 3-5,  ¶¶ 8-16; ECF 18-2). Lastly, the few portions of the Motion Plaintiff attempted to refute do nothing more than point toward irrelevant and immaterial issues in the facts asserted by the Woods.  These issues are insufficient to preclude summary judgment, as they do not create a genuine dispute of material

fact.  Ultimately, Plaintiff does nothing to refute the affidavits and testimony of Mses. Herron, Nicholson, and Villanueva, all of whom support the proper reasons for Plaintiff's nonrenewal.

Plaintiff's Opposition and his performance in the classroom have much in common – both are deficient and warrant dismissal.

## II.     ARGUMENTS

### 1.     The elements of the *Ellerth Faragher* affirmative defense are satisfied.

Plaintiff alleges the Woods' had an anti-harassment policy that existed in theory, but not in practice.  (ECF 19, pp. 4-5).  This is a red herring, as Plaintiff admitted in his deposition testimony that he was aware of the anti-harassment policy.  (Exhibit 14, Deposition of Plaintiff, 35:20-41:8; *see also* Exhibit 13, p. 90).  Nevertheless, Plaintiff attempts to support his allegations by highlighting Ms. Herron's testimony that she did not go over the Woods' handbook in detail with everyone (ECF 19-2, pp. 13-14), but this is not true.  Ms. Herron testified she does not go over *every* handbook policy with *every* new hire, only the parts that pertain to them.  (*id.*) Here, the anti-harassment policy would pertain to every employee, regardless of their position.  Ms. Herron also testified that she sits down with every new hire and reviews such policies. (*id.*) It follows that the anti-harassment policy would have been reviewed by Ms. Herron with every new hire.

Regardless of whether Ms. Herron read every page of the policy to Plaintiff, Plaintiff admits he was aware of the policy. (Exhibit 14, 35:20-41:8). He also admitted repeatedly during his deposition testimony that he never raised a complaint of harassment based on his sexual orientation prior to the time of filing his EEOC charge. (ECF 17-5, p. 13, lines 5-8, p. 14, lines 20-24, & p. 16, lines 11-19). Although Plaintiff claims these admissions are confusing in his Opposition, they are not. In his Complaint, Plaintiff points to three (3) e-mails that he says comprise his complaints regarding sexual orientation discrimination. (ECF 1, p. 3, ¶ 11-12 & p. 4, ¶ 14) In his deposition, Plaintiff admits none of these e-mails contained any such complaints, as is clear from the face of them (ECF 17-7, p. 30 & ECF 19-3), and in fact, were about something immaterial to his case (although material to the Defense). (ECF 17-5, p. 13, lines 5-8, p. 14, lines 20-24, & p. 16, lines 11-19). Consequently, Plaintiff's claims that he reported discriminatory policies to Ms. Herron and Dr. Coe, even assuming such existed, which they did not, are simply not true, which Plaintiff admits on the record (*id.;* see also Exhibit 13, pp. 92-930). Ms. Herron agrees that this was never raised *(*Exhibit 13, pp. 72-87, & 89*).* Therefore, Plaintiff's failure to report the discriminatory policies and his alleged harassment, with knowledge of the anti-harassment policy, satisfies both elements of the *Ellerth Faragher* defense and bars his sexual orientation discrimination claim.

> **2.     Plaintiff still cannot carry his burden of proving a prima facie case of sexual orientation discrimination.**

Plaintiff alleges he can establish discrimination for two (2) reasons. First, a similarly situated comparator is a non-LGBTQ+ teacher at the Woods. Second, that the Defendant's interpretation of the standard for a similarly situated comparator is far too narrow. Each of these arguments is nonsense.

First, Plaintiff claims he was treated less favorably than other similarly situated employees outside of his protected group. (ECF 19, p. 7). His expressed basis is the unsupported allegation that he was instructed not to discuss his sexual orientation, while other non-LGBTQ+ teachers were not prohibited from sharing details about their personal lives. (*id.*) As a threshold matter, while Plaintiff alleged in his Interrogatories that several teachers would support this, he deposed none of them and offered no evidence to support this claim other than his own "belief." (*id.*) This is insufficient as a matter of law, as conclusory allegations are insufficient to create genuine disputes of fact that survive summary judgment. *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 292 (5th Cir. 2020). Plaintiff also did not point to a single fact or set of circumstances that could provide factual support to his claim that non-LGBTQ+ teachers were allowed to or did share details of their personal lives. Plaintiff did not provide any specific details regarding what type of personal information teachers had shared, or even who he knew to have shared this type of information freely. Nor did Plaintiff provide any particularized facts as to when he shared personal information or why and how he was singled out with harsher

treatment for doing so.   Plaintiff's lack of support for his claim is baffling, considering he listed six (6) teachers in his Interrogatory Responses he alleged knew relevant facts. (Exhibit  12, pp. 8-9).  But Plaintiff chose to not depose any of them, and the affidavits submitted by the Woods refute any such claim.  For this reason, there is no genuine dispute of facts in the record, and as a result, his claim must be dismissed.

Second, Plaintiff is incorrect that the Woods' interpretation of a similarly situated comparator is "too narrow" to align with the Fifth Circuit's interpretation. (ECF 19, p. 8).  Plaintiff's understanding of the law, however, is flawed.  The Fifth Circuit has ruled that employees are similarly situated when they hold the same job or responsibilities, share the same supervisor, have their employment status determined by the same person, and have essentially comparable violation histories. *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 244 (5th Cir. 2019).

Even if Plaintiff's interpretation of the comparator was correct, which it is not, Plaintiff's argument is not dispositive and still does not create a genuine issue of disputed fact to overcome summary judgment.  This is because even under the broadest definition of similarly situated comparator Plaintiff *himself* urges this Court to adopt, there is still no factual evidence that supports differing treatment for non-LGBTQ+ teachers versus Plaintiff.  To the contrary, there is one other person on the Math faculty at the Woods who is a member of the LGBTQ+ community and

strongly disagrees with Plaintiff's characterizations about these policies. (Exhibit 13, pp. 103-104; ECF 17-2).  He has never been quiet about his sexual orientation and has never had any adverse consequences as a result of sharing it. (*id*.)

> **3.      Plaintiff's single piece of evidence refuting Defendant's reason for termination – a positive reference letter for an incomparable position – is insufficient to prove pretext.**

As a threshold matter, Plaintiff does nothing to refute that he was not an effective teacher while employed at the Woods and that he neither properly collaborated nor took constructive input as Ms. Naylor did.  Given Ms. Naylor's experience expressed in her affidavit (ECF 18-2), Plaintiff did not show that he was treated differently (Exhibit  13, pp. 67-68).  The only difference between Ms. Naylor and Plaintiff's experiences was his reaction, which was both improper and out of proportion to what occurred (*id.*; *see also* Exhibit  13, pp. 97-99).  Having nothing to refute the foregoing, Plaintiff lays all his hopes against the valid reason for his nonrenewal at a recommendation for a substitute teacher position for him made by Ms. Herron.  (ECF 19, pp. 9-13).  As Ms. Herron explained in her testimony, this does nothing to undermine the reasons for his nonrenewal.

In its Opening Motion, the Woods demonstrated it chose not to renew Plaintiff's employment due to instructional deficiencies within the classroom, and his lack of communication skills (ECF 17, pp. 7-9; *see also* Exhibit  13, p. 124).  Being able to communicate with Plaintiff was necessary to remedy these

instructional issues, and his inability to collaborate with any of the faculty to improve his issues, despite numerous attempts at multiple levels, was fatal to helping him achieve mastery in his instructional methods at the Woods. (ECF 17-2, 17-7 & 18). His lack of instructional skills and his inability to accept criticism as the reasons for not renewing his employment agreement were also consistent throughout the Woods' Motion to Dismiss and Motion for Summary Judgment. (ECF 17 *passim*). Additionally, these reasons were factually supported by several affidavits and documentation from Student Faculty Advisors, explaining that nine (9) out of eleven (11) students raised a variety of concerns regarding Plaintiff's Pre-Calculus course in separate meetings with them. (ECF 18, p. 3, ¶ 9, & pp. 6-9; ECF 18-1, p. 3, ¶ 10). Students complained that Plaintiff was dismissive of their questions and that they were unable to approach him with coursework questions. (*id.*) The students stated they resorted to asking other teachers for assistance with their Pre-Calculus problems, and that another student started teaching them how to work the problems on the whiteboard in class.  (*id.*)  Ms. Herron's affidavit, supported by a series of communications between herself, Plaintiff, and Dr. Coe, provides factual support for the same lack of skill with faculty.  (ECF 17-7, p. 3, ¶¶ 8-9 & p. 30).

Despite this overwhelming amount of specific evidence substantiating the Woods' reasons for nonrenewal of his employment agreement, Plaintiff claims the Woods' reason for termination was pretextual due to his misinterpretation of one

(1), singular piece of evidence – a positive recommendation for a substitute teaching position in Klein ISD.  (ECF 19, Exhibit  D).  However, as Ms. Herron explained in her deposition, there is no inconsistency here. (Exhibit 13, p. 56, line 21; p. 57, lines 13-19; p. 59:5-14; pp. 69-70 & 99-100).

First, no inconsistency exists between the positive reference and the reasons for Plaintiff's nonrenewal, as several factors varied from the positive reference letter and the former position in which he served.  The position was for a substitute teacher, not a full-time classroom teacher.  Those in a substitute teaching role are not responsible for making curriculum choices, as the regular teacher has all control over curriculum choices or assisting students in mastery of educational goals throughout the year.  This necessarily implies that substitute teachers do not have to receive feedback on the effectiveness of their instructional skills. Therefore, a scenario where a breakdown in the communication between a principal and a substitute teacher over instructional concerns never unfolds.  Additionally, the position was for Klein ISD, another school with a different demographic of students, highly likely to come with differing needs.  Therefore, the Plaintiff's success at the Woods' is unlikely to be indicative of his success in a more limited role, in a different school setting, with a different demographic of students, and a differing set of educational needs.  As Ms. Herron explained, she was hopeful Plaintiff would be able to improve his skills as a substitute and believed that such a context would be helpful to him and

not harmful to others. (*id.*)

Second, even if Plaintiff did prove an inconsistency between the positive reference and the Woods' proffered reasons for not renewing his employment agreement, the inconsistency is still insufficient to overcome summary judgment. To overcome summary judgment, Plaintiff must demonstrate pretext by creating a conflict of substantial evidence.  Because there is a plethora of factual evidence proving Plaintiff struggled with instructional skills and the ability to collaborate properly, numerous parent e-mails proving that parents and students alike had issues with his instructional skills, three (3) affidavits from other teachers at the Woods who documented their students' concerns and complaints about the Plaintiff's Pre-Calculus course and his refusal to help them, deposition testimony from Ms. Herron corroborating each of these concerns, among many more–the evidence against Plaintiff's discrepancy theory is insurmountable (ECF 18).  Plaintiff has refuted none of this and has not shown how he was treated differently, nor has he identified a proper comparator.  In sum, there is no genuine issue of a material fact, Plaintiff cannot establish pretext, and the evidence supporting his nonrenewal is substantial and unrefuted.  Plaintiff's claim of sexual orientation discrimination must be dismissed.

> **4.     Plaintiff untimely and improperly asserts a failure-to-accommodate cause of action, which the Court must disregard.**

Plaintiff's Opposition claims he established his prima facie case on two (2) different disability claims – disability discrimination *and* failure to accommodate. This is false, as Plaintiff has improperly and untimely asserted a new cause of action that is not properly before the Court. Prior to the filing of the Opposition, Plaintiff's complaint only contained one (1) cause of action based upon disability. (ECF 1). Plaintiff's Opposition cites case law that distinguishes between disability discrimination and failure-to-accommodate claims. Therefore, Plaintiff should have known the two (2) claims' distinguishable elements require them to be separately pled as well. This Court should not grant Plaintiff leave to amend his Complaint and properly plead a failure-to-accommodate cause of action, as the evidence Plaintiff cites is insufficient to survive summary judgment even if amended.

For a failure-to-accommodate claim to be successful, the plaintiff must prove: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (2013). A job function is essential, within the meaning of the ADA's definition of a qualified individual as an individual who, with or without reasonable accommodation, can perform the essential functions of the job, if the function bears more than a marginal relationship to the employee's job. *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688 (5th

Cir. 2014). Here, Plaintiff's Opposition argues that he could not work until the "harassment" was stopped.  (ECF 19, p. 15, Exhibit  C).  As demonstrated above, the "harassment" alleged was neither specified nor cognizable.  Even if it were, which it was not, Plaintiff's disability of anxiety and high blood pressure, which was allegedly aggravated by the job and left him unable to return to work, renders him unqualified.  The *most essential* function of being a teacher is providing classroom instruction, which Plaintiff admits he was unable to do without an unspecified accommodation of uncertain duration, all without any doctor's note supporting same (Exhibit  13, p. 114 & 118; ECF 17-7, p. 3, ¶¶ 9 & 10). Therefore, Plaintiff's failure-to-accommodate cause of action should be disregarded, as it was improperly and untimely pled.  Even if it were properly pled, Plaintiff's testimony that he was unable to work indefinitely because of a perceived issue leaves no substantial fact in dispute.  As Plaintiff would be unqualified under the ADA, his failure-to-accommodate claim fails and should be dismissed on summary judgment.

**5.      Plaintiff still cannot meet his evidentiary burden to support his prima facie case of disability discrimination.**

To be entitled to relief under the ADA, Plaintiff has the burden to show he was disabled at the time he was dismissed from his position. *Griffin v. UPS*, 661 F.3d 216, 222 (5th Cir. 2011). Disability is proven with specific evidence that the plaintiff's particular impairment substantially limits his particular major life activity.

To survive summary judgment in favor of a defendant, the plaintiff must show that his impairment has actually and substantially limited the major life activity on which he relies. *Waldrip v. General Electric Company*, 325 F.3d 652, 656 (5th Cir. 2003).

Plaintiff's Opposition failed to point toward any specific evidence to establish that he was actually and substantially limited in any life activity.  Plaintiff points only toward his testimony that he sent Ms. Herron an e-mail stating that he "experienced a high blood pressure, agitated, sleepless night." (ECF 19, p. 15). Neither did Plaintiff produce any evidence showing how stress, anxiety, or high blood pressure substantially impaired any of his major life activities.  Plaintiff did not produce any medical evidence to prove he was being treated for any ongoing disease possible of rendering him disabled, nor did he produce any factual proof that he had stress, anxiety, or high blood pressure at all, much less any that was connected to any actionable harassment. Plaintiff, again, did not proffer any factual evidence to support his disability claim despite stating in his Interrogatories that he was being treated by four (4) different doctors for his anxiety and high blood pressure.

Furthermore, Ms. Herron testified that when she met with Plaintiff in April, he did not present a doctor's note of any kind or request any accommodations. (Exhibit  13, 65:7- 66:4).  To the contrary, Ms. Herron even suggested that he see a doctor after Plaintiff told her he had not seen one in years. (*id.*) Plaintiff's choice to not submit either medical evidence to the Woods to prove his disability (ECF 17-5,

p. 17, lines 18-20) or any record of his alleged disabilities being treated or diagnosed by such doctors during this case, demonstrates that no evidence exists to support his claim that he was disabled, and therefore, fails for lack of proof.

**6.      Plaintiff still cannot establish a prima facie case of retaliation.**

First, Plaintiff failed to offer any factual evidence to support his testimony that he met with Ms. Herron and Dr. Coe to complain about the school's alleged policies against discussing his sexual orientation at school. Neither did he produce any factual evidence to support the claim that he reported to Ms. Herron that Dr. Coe treated him differently because of his sexual orientation. Second, Plaintiff offers no factual support to prove his testimony that he discussed concern over his harassment due to his sexual orientation on the eve of the April 29th e-mail. Such unsupported assertions are insufficient to overcome summary judgment.

The April 29th e-mail, sent after a meeting with Ms. Herron, proves Plaintiff was not complaining about harassment due to his sexual orientation, as he admits, but instead, focuses on his admissions about his own instructional issues and the Woods COVID-19 policies that applied to everyone (ECF 19-3, p. 2). Not only does Plaintiff never mention that he believed the alleged harassment was due to disapproval of his sexual orientation, but he used the word harassment in a different context and about a different subject.

Finally, Plaintiff has failed to introduce any evidence into the record that

establishes the causal link necessary to succeed on a retaliation claim.  Plaintiff

claims he has sufficiently proven that a causal link exists between the alleged

protected activity and his termination because Ms. Herron "knew of the protected

activity immediately before his termination." (ECF 19, p. 16).  However, this is not

true.  Ms. Herron testified that she did not know Plaintiff felt as if he had been treated

differently due to his sexual orientation until the time of the EEOC Charge (Exhibit

13, 65:2-6 & 93:1-94:10).  Further supporting Ms. Herron's affidavits, the affidavits

of three (3) of the Woods' teachers reveal the same truth – that *nobody* at the Woods

knew Plaintiff felt as if he had been treated differently because of his sexual

orientation during his time at the Woods.

## V.    CONCLUSION

Defendant requests that the Court grant its Motion for Summary Judgment,

order that Plaintiff take nothing on his claims against the Woods, and grant the

Woods all such other and further relief to which it may be entitled, at law or in equity.

Respectfully submitted,

_____
Bryant S. Banes
Texas State Bar No. 24035950
Federal ID No. 31149
Neel, Hooper & Banes, P.C.
1800 West Loop South, Suite 1750
Houston, Texas 77027
Telephone:  (713) 629-1800
Facsimile:  (713) 629-1812
E-mail:  bbanes@nhblaw.com
**ATTORNEY FOR DEFENDANT,**
**SCHOOL OF THE WOODS**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served upon counsel for Plaintiff as listed below by operation of the Court's electronic filing system on this, 26th day of January 2024.

Ronald Dupree
Dupree Law Firm, PLLC
2800 Post Oak Blvd, Suite 4100
Houston Texas 77056
E-mail:  Ronald@dupreelawfirm.com

_____
Bryant S. Banes